UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LETHONIA MILLER,

                                                                          REPORT
                                        Plaintiff,                         and
                        v.                                        RECOMMENDATION
                                                                  -----------------------------
NEW YORK STATE POLICE,                                            DECISION
KEVIN KENDALL, and                                                   and
FRANCIS P. CHRISTENSEN,                                            ORDER

                                        Defendants.               14-CV-00393A(F)
_____

APPEARANCES:        LAW OFFICE OF LINDY KORN
                    Attorneys for Plaintiff
                    LINDY KORN, and
                    WILLIAM F. HARPER V, of Counsel
                    535 Washington Street
                    9th Floor
                    Buffalo, New York  14203

                    ERIC T. SCHNEIDERMAN
                    ATTORNEY GENERAL, STATE OF NEW YORK
                    Attorney for Defendants
                      New York State Police and Christensen
                    GEORGE MICHAEL ZIMMERMANN
                    Assistant Attorney General, of Counsel
                    350 Main Street
                    Suite 300A
                    Buffalo, New York  14202

                    PERSONIUS MELBER LLP
                    Attorneys for Defendant Kendall
                    RODNEY O. PERSONIUS, of Counsel
                    2100 Main Place Tower
                    350 Main Street
                    Buffalo, New York  14202

## JURISDICTION

This action was referred to the undersigned on October 29, 2014, by Honorable

Richard J. Arcara, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion to dismiss filed September 24, 2014 (Dkt. 13), and on Plaintiff's

motions for leave to file an amended complaint filed October 31, 2014 (Dkt. 19), and

February 16, 2016 (Dkt. 27).[1]


## BACKGROUND

Plaintiff Lethonia Miller ("Plaintiff" or "Miller"), an African American male,

commenced this employment discrimination action on May 23, 2014, alleging

Defendants, including his employer New York State Police ("State Police"), and State

Police employee Kevin Kendall ("Kendall"), engaged in discriminatory conduct with

respect to Plaintiff's employment with the State Police, based on Plaintiff's race and

disability, and asserting four claims for relief.  On August 15, 2014, the State Police filed

an answer (Dkt. 8).  On September 5, 2014, Plaintiff filed an amended complaint (Dkt.

9) ("First Amended Complaint"), against the State Police and Kendall, as well as State

Police employee Francis P. Christensen ("Christensen") (together, "Defendants"),

asserting thirteen claims for relief.

In particular, Plaintiff's First, Second, and Third Claims for Relief allege,

respectively, disparate treatment, retaliation, and hostile work environment based on

Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.* ("Title VII") ("Title VII claims").[2]  Plaintiff's Fourth, Fifth, and Sixth Claims for

Relief respectively allege against Defendant Kendall disparate treatment, retaliation,

---

[1] Although the motion to dismiss is dispositive, and the motions for leave to file an amended complaint are nondispositive, because the issues in all three motions largely overlap, all three motions are addressed in this combined Report and Recommendation/Decision and Order in the interests of clarity and judicial economy.
[2] The First Amended Complaint does not specify against whom the Title VII Claims are asserted.

and hostile work environment based on Plaintiff's race in violation of 42 U.S.C. § 1983 ("§ 1983") ("§ 1983 claims").  Plaintiff's Seventh, Eighth, and Ninth Claims for Relief respectively allege against Defendant Kendall interference with contract based on disparate treatment, retaliation, and hostile work environment on account of Plaintiff's race in violation of 42 U.S.C. § 1981 ("§ 1981") ("§ 1981 claims").  Plaintiff's Tenth Claim for Relief alleges a violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12201 *et seq.* ("ADA") ("ADA claim"), when, after presenting a doctor's note requesting a medical leave for Plaintiff because of stress in the work place, Defendants suspended Plaintiff without pay.[3]  Plaintiff's Eleventh and Twelfth Claims for Relief respectively allege denial of leave and retaliation against Defendants State Police and Christensen in violation of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") ("FMLA claims").  Plaintiff's Thirteenth Claim for Relief alleges Defendant Christensen deprived him of due process in violation of § 1983 ("due process claim").  On September 24, 2014, Defendants State Police and Christensen filed a motion pursuant to Fed.R.Civ.P. 12(b)(1) and (6), seeking to dismiss the First Amended Complaint for lack of jurisdiction and failure to state a claim (Dkt. 13) ("Motion to Dismiss"), attaching the Memorandum of Law in Support of Defendants' New York State Police and Francis P. Christensen's Motion to Dismiss (Dkt. 13-1) ("Defendants' Memorandum").

On October 31, 2014, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendants', New York State Police and Francis P. Christensen, Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 18) ("Plaintiff's Response").  Also filed on October 31, 2014, was Plaintiff's Motion for Leave to Amend

---

[3] The First Amended Complaint does not specify against which Defendant the ADA claim is asserted.

the Complaint (Dkt. 19) ("Plaintiff's First Motion to Amend"), attaching the Declaration of William F. Harper V, Esq. (Dkt. 19-1) ("First Harper Declaration"), the proposed amended complaint (Dkt. 19-2) ("First Proposed Amended Complaint"), and the Memorandum of Law in Support of Plaintiff's Motion to Amend Complaint (Dkt. 19-3) ("Plaintiff's First Memorandum").

On November 17, 2014, Defendants filed the Reply Memorandum of Law in Further Support of Defendants New York State Police and Francis P. Christensen's Motion to Dismiss (Dkt. 21) ("Defendants' Reply"), attaching the Declaration of Assistant Attorney General ("AAG") George Michael Zimmermann (Dkt. 21-1) ("Zimmermann Declaration"). On November 24, 2014, Defendant Kendall filed the Declaration of Rodney O. Personius, Esq. (Dkt. 22) ("First Personius Declaration"), declaring Kendall was joining in the Motion to Dismiss filed by his co-Defendants.

On May 29, 2015, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Motion to Amend (Dkt. 24) ("Defendants' First Response"). Also filed on May 29, 2015, was the Declaration of Rodney O. Personius, Esq. (Dkt. 25) ("Second Personius Declaration"), declaring Kendall joined in his co-Defendants' opposition to Plaintiff's First Motion to Amend. On June 12, 2015, Plaintiff filed Plaintiff's Memorandum of Law in Further Support of Plaintiff's Motion for Leave to Amend Complaint and in Response to Defendant's Opposition to Same (Dkt. 26) ("Plaintiff's First Reply").

On February 15, 2016, Plaintiff filed his Second Motion for Leave to Amend the Complaint (Dkt. 27) ("Plaintiff's Second Motion to Amend"), attaching the Declaration of William F. Harper V, Esq. (Dkt. 27-1) ("Second Harper Declaration"), the Memorandum

of Law in Support of Plaintiff's Motion to Amend Complaint (Dkt. 27-2) ("Plaintiff's

Second Memorandum"), and the second proposed amended complaint (Dkt. 27-3)

("Second Proposed Amended Complaint").  On March 2, 2016, Defendants filed the

Memorandum of Law in Opposition to Plaintiff's Second Motion to Amend (Dkt. 29)

("Defendants' Second Response").  On March 4, 2016, Kendall filed the Declaration of

Rodney O. Personius, Esq. (Dkt. 30) ("Third Personius Declaration"), declaring Kendall

joined in his co-Defendants' opposition to Plaintiff's Second Motion to Amend.  On

March 14, 2016, Plaintiff filed Plaintiff's Memorandum of Law in Further Support of

Plaintiff's Motion for Leave to Amend Complaint and in Response to Defendants'

Opposition to Same (Dkt. 31) ("Plaintiff's Second Reply").  Oral argument was deemed

unnecessary.

Based on the following, the Motion to Dismiss should be GRANTED in part and

DENIED in part; Plaintiffs' First Motion to Amend is DISMISSED as moot; Plaintiff's

Second Motion to Amend is GRANTED in part and DENIED in part.


### FACTS[4]

On March 30, 1987, Plaintiff Lethonia Miller ("Plaintiff" or "Miller"), commenced

employment with Defendant New York State Police ("State Police"), as a Recruit

Trooper.  In March of 2008, Plaintiff began working on the State Police's Violent Felony

Warrant Squad ("the Warrant Squad"), with whom Plaintiff is currently employed as an

Investigator.  Plaintiff's immediate supervisor is Defendant Kevin Kendall ("Kendall"),

Senior Investigator with the Warrant Squad.  Plaintiff maintains that throughout his

employment on the Warrant Squad, Kendall has regularly referred to African Americans

---

[4] Taken from the pleadings and motion papers filed in this action.

by such derogatory terms and slurs as "niggers," "niggas," "monkeys," "savages," and "animals," First Amended Complaint ¶ 13, and that despite Plaintiff's repeated requests,[5] Kendall continued to use such racially derogatory terms.  *Id.* ¶ 14.  According to Plaintiff, Kendall has used racially derogatory terms while conducting investigations in the course of their State Police employment, *id.* ¶¶ 15-19, 23-24, in other work-related settings, *id.* ¶¶ 25-29, and outside of work in social media postings including Facebook. *Id.* ¶¶ 20-22.  Plaintiff specifically describes 15 occasions between June 2010, and June 11, 2013, in which Kendall allegedly uttered racially derogatory terms either during the course of employment with the State Police or in social media postings.  *Id.* ¶¶ 14-29.

In July 2013, Plaintiff asked Kendall about an overtime opportunity through participation in the U.S. Marshal's Office Sex Offender Detail ("Marshal's Detail"), and Kendall responded that when the Marshal's Detail became available, Plaintiff could attend.  On July 15, 2013, Plaintiff filed an internal complaint with the State Police's Equal Employment Opportunity office ("EEO"), describing Kendall's usage of racially derogatory terms ("EEO Complaint").  During a related meeting with State Police EEO Counselor Captain Lyons ("Captain Lyons"), Plaintiff reported Kendall, who currently is Plaintiff's supervisor, has used the racially derogatory terms since 2008.  On August 1, 2013, Plaintiff spoke with Captain Kevin Reilly ("Captain Reilly"), of the State Police Internal Affairs Bureau – West, who promised Plaintiff that Kendall's computer would be forensically examined for evidence in connection with the investigation related to Plaintiff's EEO Complaint, and that Kendall would be notified the next day that Kendall was the subject of an EEO Complaint.  On August 7, 2013, Plaintiff requested from Kendall permission to work on the Marshal's Detail and Kendall, despite previously

---

[5] Plaintiff does not specify when he first requested Kendall stop using racially derogatory slurs and terms.

agreeing to permit Plaintiff to work on the Marshal's Detail, denied Plaintiff permission to do so, asserting there were too many people on the Marshal's Detail for Plaintiff to participate.  On August 8, 2013, State Police Senior Investigator June Bradley ("Bradley"), returned a telephone call to Plaintiff who reported Kendall had denied Plaintiff's request to attend the Marshal's Detail.  Later that same day, Plaintiff spoke with Deputy U.S. Marshal Rick Rooney ("Rooney"), coordinator of the Marshal's Detail in Rochester, who, contrary to Kendall's assertion that there were too many people assigned to the Marshal's Detail, advised that Plaintiff could have participated in the Marshal's Detail for the last two days.

On September 9, 2013, Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"), a complaint designated as EEOC Charge No. 525-2013-00798 ("EEOC Complaint").  On February 27, 2014, the EEOC mailed Plaintiff a Dismissal and Notice of Right to Sue letter ("Right to Sue Letter").[6]   On May 23, 2014, Plaintiff commenced this action.

On June 17, 2014, Plaintiff presented to the State Police a doctor's note ("doctor's note"), explaining Plaintiff was being treated for depression based on work-place related stress and requesting Plaintiff be excused from work.  After receiving the note, Plaintiff was suspended by the State Police without pay.  According to a letter written by Christensen, the suspension was based on Plaintiff's doctor's note.  Based on the suspension, Plaintiff was required to surrender his badge, service weapon, identification, and telephone, and in June or July 2014, Plaintiff was advised that he could not return to work until after undergoing an Independent Medical Examination

---

[6] No copy of the Right to Sue Letter is in the record, nor does any party explain the reason for the EEOC's dismissal of the EEOC Complaint.

("IME") by a State Police physician for which Plaintiff's execution of a medical authorization for Plaintiff's records ("records release authorization"), was demanded. On July 16, 2014, Plaintiff delivered the requested records release authorization to the State Police who, on July 17, 2014, demanded Plaintiff retrieve his medical records himself.  Defendant State Police arranged for the IME to be conducted on July 23, 2014 in Albany, New York, and Plaintiff's request that the IME be conducted in Buffalo, New York, where Plaintiff is domiciled and stationed, was denied.  Plaintiff complied and underwent the IME as scheduled on July 23, 2014, in Albany.  On August 13, 2014, Christensen, based on the IME results, notified Plaintiff that he was not fit for duty, extending indefinitely Plaintiff's involuntary suspension.  On August 18, 2014, Plaintiff mailed to the State Police his demand for a hearing on his fitness for duty and resulting involuntary suspension without pay.  To date, no hearing on the issue of Plaintiff's fitness for duty has been scheduled and Plaintiff remains unable to resume his work for the State Police.

On October 20, 2014, Plaintiff requested authorization from the State Police to engage in other employment, a practice which Plaintiff maintains is permitted under the State Police rules.  After reviewing the request, three State Police employees unanimously denied the request as not permitted under relevant State Police regulations.

## DISCUSSION

Defendants State Police and Christensen have moved to dismiss the First Amended Complaint in its entirety as against State Police and Christensen.  Defendant

Kendall has not separately moved to dismiss the Amended Compliant, but joins in the Motion to Dismiss insofar as the arguments raised by the State Police and Christensen could also be asserted by Kendall.  Plaintiff has filed two motions seeking leave to file further amended complaints providing further factual allegations clarifying the claims in the First Amended Complaint, as well as asserting additional claims and adding a new Defendant, *i.e.*, First Deputy Superintendent Kevin Gagan ("Gagan").  In the interest of judicial economy, the court first addresses whether each of the alleged claims states a claim for which relief can be granted pursuant to the predicate statute and, second, whether Plaintiff should be granted leave to amend each claim or to assert the newly proposed claims.

## 1.    Motion to Dismiss

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*,

556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at

679).

 "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v.

Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678);

*see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim

to relief that is plausible on its face"). The factual allegations of the complaint "must be

enough to raise a right to relief above the speculative level on the assumption that all

the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

 "'In adjudicating a motion to dismiss, a court may consider only the complaint,

any written instrument attached, and any document upon which the complaint heavily

relies.'" *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re

Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). *See Rothman v. Gregor*, 220 F.3d 81,

88-89 (2d Cir. 2000) (considering the complaint to include "any written instrument

attached to it as an exhibit or any statements or documents incorporated in it by

reference," as well as "documents that the plaintiffs either possessed or knew about and

upon which they relied in bringing the suit . . . ."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Here, although Plaintiff references in the First Amended Complaint both the EEOC Complaint and a doctor's note, the failure to include either document in the record renders the court without knowledge of their content and, thus, precludes the court's consideration of them other than the fact that such documents exist. *See Treistman v. Wacks*, 2014 WL 6685473, at * 5 (N.D.N.Y. Nov. 26, 2014) (declining to consider on motion on the pleadings certain family court orders, generically referred to by the plaintiff in his complain and on the existence of which the defendants relied where both parties failed to include in the record either the family court orders or their terms).

**2.    Motion to Amend**

Plaintiff has filed two motions for leave to file further amended complaints. Because the Second Proposed Amended Complaint filed with respect to Plaintiff's Second Motion to Amend includes all the proposed amendments contained in the First Proposed Amended Complaint filed in connection with Plaintiff's First Motion to Amend, Plaintiff's First Motion to Amend, in the interests of judicial economy and simplicity, is DISMISSED as moot,[7] and the court addresses the parties' arguments only with regard to Plaintiff's Second Motion to Amend.

---

[7] Despite dismissing the First Motion to Amend, any arguments made in support of or in opposition to the First Motion to Amend are considered with regard to the Second Motion to Amend inasmuch as the arguments made with respect to the First Motion to Amend are not reasserted in connection with the Second Motion to Amend.

Under Fed.R.Civ.P. 15(a)(2) ("Rule 15(a)(2)"), "[t]he court should freely give leave when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (leave to file an amended complaint "shall be freely given when justice so requires."). "[A]n amended pleading may be filed pursuant to Rule 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile." *Warren v. Goord*, 2006 WL 1582385, at * 7 (W.D.N.Y. May 26, 2006). Further, "[a]n amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). In ruling on a motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed amended pleading, the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Here, Plaintiff filed in support of Plaintiff's Second Motion to Amend a copy of the Second Proposed Amended Complaint, but no exhibits. Further, insofar as Plaintiff refers to his EEOC Complaint and a doctor's note, thereby incorporating them by reference into the Second Proposed Amended Complaint, the court's consideration of the content of either document, insofar as the content is disputed, is precluded because the content of neither document is before the court. *Treistman*, 2014 WL 6685473, at * 5. Where a proposed amended complaint suffers from the same infirmities as does the complaint sought to be amended, the proposed amended complaint could not avoid dismissal for failure to state a claim and, as such, is futile. *Dougherty*, 282 F.3d at 88.

### 3.    *Prima Facie* Case of Employment Discrimination

Whether the alleged employment discrimination is based on race or disability,

and regardless of the statutory predicate for an employment discrimination claim, courts

analyze disparate treatment claims under the burden-shifting framework of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell Douglas*").  *Demoret v.*

*Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).  Specifically, the plaintiff must first establish

a *prima facie* case of employment discrimination, after which the burden shifts to the

defendant to provide a legitimate, non-discriminatory reason for the alleged disparate

treatment, thus shifting the burden back to the plaintiff to establish that the defendant's

proffered legitimate, non-discriminatory reason is mere pretext.  *Demoret*, 451 F.3d at

151 (citing *McDonnell Douglas*, 411 U.S. at 802-04).  Retaliation claims are also

analyzed under the *McDonnell Douglas* burden-shifting framework.  *Graziadio v.*

*Culinary Institute of America*, __ F.3d __, 2016 WL 1055742, at * 11 (2d Cir. Mar. 17,

2016) (FMLA retaliation claims); *Ya-Chen Chen v. City University of New York*, 805

F.3d 59, 70 (2d Cir. 2015) (Title VII retaliation claims); *Treglia v. Town of Manlius*, 313

F.3d 713, 719 (2d Cir. 2002) (ADA retaliation claims).  In contrast, hostile work

environment claims are not subject to the *McDonnell Douglas* burden-shifting analysis,

but require the plaintiff to "'produce enough evidence to show that the workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'"  *Rivera v. Rochester Genesee Regional Transportation*

*Authority*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Gorzynski v. JetBlue Airways*

*Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (further internal quotations omitted)).

To survive a motion to dismiss, however, a plaintiff asserting employment discrimination claims "need not allege 'specific facts establishing a *prima facie* case of discrimination'" under *McDonnell Douglas*. *Boykin v. KeyCorp.*, 521 F.3d 202, 212 (2d Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Specifically, "the *McDonnell Douglas* burden-shifting framework 'is an evidentiary standard, not a pleading requirement' . . . [such] that to require more than Rule 8(a)'s 'simplified notice pleading standard' would unjustly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 510, 512-13). *Swierkiewicz* applies to the same employment discrimination claims that are subject to the *McDonnell Douglas* burden-shifting analysis. *Id.* at 213.

Regardless of whether Plaintiff's employment discrimination claims are disparate treatment or retaliation claims subject to the *McDonnell Douglas* burden-shifting analysis, or hostile work environment claims requiring a showing that the workplace was so permeated with discrimination as to alter the conditions of employment, "[a]sking for plausible grounds to infer [employment discrimination] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [employment discrimination]." *Twombly*, 550 U.S. at 556. "Specific facts are not necessary," because the plaintiff "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Thus, although Plaintiff need not plead sufficient facts to establish a *prima facie* case of employment discrimination to survive Defendants' Motion to Dismiss, the court considers the elements of a *prima facie* case in determining whether there is sufficient

14

factual matter in the Complaint which, if true, gives Defendant "fair notice" of Plaintiff's

employment discrimination claims and the grounds on which such claims rest.

*Erickson*, 551 U.S. at 93.

**4.     Claims**

**        A.      Title VII Claims**

In the Title VII Claims before the court, Plaintiff alleges Defendants, through

Kendall's repeated use of racially derogatory terms and slurs, engaged in racially

disparate treatment, Amended Complaint, First Claim, and created a racially hostile

work environment, *id.*, Third Claim, then retaliated against Plaintiff for complaining about

the treatment and hostile work environment by denying Plaintiff's request to be assigned

to overtime work on the Marshal's Detail.  *Id.*, Second Claim.  "Title VII makes it

unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin.'"  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d

72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-2(a)(1)).

**        1.      Motion to Dismiss**

Defendants argue in support of dismissal of the Title VII claims that the Title VII

claims cannot be brought against individual defendants and, as such, the Title VII

claims must be dismissed as against Christensen, Defendants' Memorandum at 5-6,

and Kendall.  First Personius Declaration ¶ 3 (joining in Motion to Dismiss).  Plaintiff

concedes to the dismissal of the Title VII claims as against the individual Defendants

Christensen and Kendall, but maintains the claims should continue as against

Defendant State Police, for whom dismissal has not been sought, Plaintiff's Response at 2-3, and Defendants acknowledge the concession.  Defendants' Reply at 2.

At the pleadings state, the plaintiff is not required to plead a *prima facie* case of employment discrimination as contemplated under the *McDonnell Douglas* framework, *id*. at 84; rather, "Title VII [ ] requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Id*. at 85.  "As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." *Id*.  ("'A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.'" (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))).   Examples of adverse employment actions include termination of employment, demotion evidence by decreased pay, lesser title, loss of material benefits, significantly diminished material responsibilities, or some other indication unique to the particular situation.  *Id*.  With respect to the second element, "an action is 'because of' a plaintiff's race, . . . where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action."  *Id*.  As such, a plaintiff in a Title VII disparate treatment claim need not allege "but-for" causation.  *Id*.

With regard to a Title VII retaliation claim, a plaintiff "must plausible allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)).  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-

for' cause of the employer's adverse action . . . [i]t is not enough that retaliation was a

'substantial' or 'motivating' factor in the employer's decision." *Id.* at 90-91 (citing *Univ.*

*of Tex. Sw. Med. Ctr v. Nassar*, __ U.S. __, 133 S.Ct. 2517, 2533 (2013)).

To state a claim for a hostile work environment under Title VII, the plaintiff must

allege that "'the workplace is permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320-

31 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Objectively, "'the

conduct complained of must be severe or pervasive enough that a reasonable person

would find it hostile or abusive, and the victim must subjectively perceive the work

environment to be abusive.'" *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114

(2d Cir. 2014)).

Further, *Iqbal*'s plausibility test requires that "the facts alleged in the complaint

must provide 'at least minimal support for the proposition that the employer was

motivated by discriminatory intent.'" *Vega*, 801 F.3d at 86 (quoting *Littlejohn v. City of*

*New York*, 795 F.3d 297, 311 (2d Cir. 2015)).  The "'plausibility standard in not akin to a

'probability requirement.'" *Id.* at 87 (quoting *Iqbal*, 556 U.S. at 678).  "On a motion to

dismiss, the question is not whether a plaintiff is likely to prevail, but whether the well-

pleaded factual allegations plausibly give rise to an inference of unlawful discrimination,

*i.e.*, whether plaintiff alleges enough to 'nudge[ ] their claims across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Within the Second Circuit, however, it is settled that "Title VII does not impose

liability on individuals. . . , " *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012),

even if the individuals had supervisory control over the plaintiff. *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("under Title VII individual supervisors are not subject to liability"). This is because "[e]mployers, not individuals, are liable under Title VII." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). Accordingly, the Motion to Dismiss should be GRANTED as to the Title VII claims asserted against Christensen and Kendall; the Title VII claims should continue as against the State Police.[8]

### 2.    Second Motion to Amend

With respect to all three Title VII claims, Plaintiff seeks to clarify that such claims are alleged against Defendant State Police. First Proposed Amended Complaint ¶¶ 58, 65, and 70; Second Proposed Amended Complaint ¶¶ 69, 76, and 81. Plaintiff also seeks to assert with regard to the Title VII disparate treatment claim that Plaintiff was denied by Kendall the opportunity to engage in outside employment while on leave from his State Police job, Second Proposed Amended Complaint ¶ 67, and that white employees were not denied the same opportunity. *Id.* ¶ 68. Plaintiff seeks to amend his Title VII retaliation claim to assert as an additional protected activity Plaintiff's filing of the instant action. *Id.* ¶ 73. As for Plaintiff's Title VII hostile work environment claim, Plaintiff seeks to add that Kendall's denial of Plaintiff's requests to engage in outside

---

[8]  Because Defendants do not contend Plaintiff's allegations of racial slurs by Kendall against third parties who are not State Police employees fail to establish an actionable form of employment discrimination against Plaintiff under Title VII, *see, e.g.*, *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999) (affirming judgment in favor of defendant as a matter of law where the plaintiff failed to establish under Title VII that any of the defendants' asserted unlawful conduct, racial slurs, was directed at the plaintiff, rather than at non-employee third parties); *Nicolosi-Russo v. Program Brokerage Corp.*, 2006 WL 3690654, at *3 (S.D.N.Y. Dec. 13, 2006) (dismissing for failure to state a claim of employment discrimination under Title VII claims "relying solely on allegations of defendant's [racially] discriminatory attitude toward, or treatment of, non-employees . . . "), the court needs not address this question in order to resolve Defendants' Motion to Dismiss. *See Grant v. County of Erie*, 542 Fed.Appx. 21, 24 (2d Cir. Oct. 17, 2013) (reversing district court's *sua sponte* dismissal of action for failure to state a claim based on the court's failure to provide the plaintiff with notice of grounds for dismissal and an opportunity to be heard); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (a district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard).

employment has contributed to the "pervasive atmosphere of discrimination that alters the condition of his work environment," *id.* ¶ 79, and that such denial "is specifically determined by the employer, and, therefore, attributable to the same."  *Id.* ¶ 80.  In opposition to Plaintiff's Second Motion to Amend, Defendants argue the Second Proposed Amended Compliant suffers from the same flaws as the First Amended Complaint and, as such, would be unable to withstand a motion to dismiss and is futile. Defendants' Second Response at 2.  In further support of the Second Motion to Amend, Plaintiff maintains Defendants do not challenge the Title VII claims in the Second Proposed Amended Complaint.  Plaintiff's Second Reply at 4.

Although Defendants have not set out in a separate paragraph their objections to the proposed amended Title VII claims, Defendants have specifically argued that the Second Proposed Amended Complaint "suffers from the same flaws" as the First Amended Complaint, such that the claims contained in the Second Proposed Amended Complaint would be subject to a meritorious motion to dismiss, rendering futile the Second Motion to Amend.  Defendants' Second Response at 2.  As Defendants argue, the Second Proposed Amended Complaint does not cure the infirmity of the Title VII claims asserted in the First Amended Complaint, *i.e.*, that Title VII liability may not be imposed on individuals, but only on employers, *Reynolds*, 685 F.3d at 202, a point which Plaintiff conceded on the Motion to Dismiss.  Plaintiff's Response at 2-3. Defendants have not, however, opposed the Second Motion to Amend as unduly delayed or based on bad faith.  Nor have Defendants offered any objection to the proposed clarification that the Title VII claims are asserted against the State Police. Significantly, that the new assertions Plaintiff seeks to add, including the denial of

Plaintiff's requests to engage in outside employment while on leave from the State

Police, retaliation based on Plaintiff's filing of the instant action, and hostile work

environment based on the denial of Plaintiff's request to engage in outside employment,

pertain to events that occurred after the First Amended Complaint was filed establishes

that Plaintiff did not unduly delay in seeking permission to add such claims.  Nor is there

any apparent reason for finding such proposed claims are asserted in bad faith.

Accordingly, with regard to the Title VII claims, the Second Motion to Amend is

GRANTED with respect to the State Police, but DENIED with respect to Defendants

Christensen and Kendall, as well as to Gagan whom Plaintiff seeks to add as a

Defendant.

### B.    § 1981 and § 1983 Claims

Plaintiff alleges that Defendant Kendall, by discriminating against Plaintiff based

on his race, retaliating against Plaintiff for complaining about such discrimination, and

subjecting Plaintiff to a racially hostile work environment, all in violation of Title VII,

deprived Plaintiff of a federal right in violation of 42 U.S.C. § 1983.  First Amended

Complaint Claims Four, Five, and Six.  Plaintiff also alleges the asserted racial-based

employment discrimination, retaliation, and hostile work environment interfered with

Plaintiff's right under 42 U.S.C. § 1981 to make and enforce contracts.  First Amended

Complaint Claims Seven, Eight, and Nine.

### 1.    Motion to Dismiss

Defendants have not moved with regard to the § 1981 and the § 1983 claims,

presumably because they are alleged only as against Kendall who did not separately

move to dismiss but, rather, only joins in the Motion to Dismiss filed by Christensen and

the State Police, and, thus, no argument is asserted in support of dismissing the § 1981

and § 1983 claims as against Kendall.  Plaintiff observes these claims remain

unchallenged and are ready for trial.  Plaintiff's Response at 3.  Defendants have not

replied with regard to the § 1981 and § 1983 claims.  Accordingly, the Motion to Dismiss

should be DENIED as to the § 1981 and § 1983 claims asserted against Kendall.

### 2.    Second Motion to Amend

Plaintiff does not seek to amend any of the § 1981 and § 1983 claims.

### C.    ADA Claim

Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the

basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In the instant case,

Plaintiff alleges Defendants violated the ADA with regard to Plaintiff's employment when

Plaintiff, based on his perceived disability of depression, was suspended without pay as

of June 17, 2014, rather than being excused from work because of alleged stress in the

workplace as per the doctor's note Plaintiff delivered to the State Police.  First Amended

Complaint ¶¶ 36, 107-09.

### 1.    Motion to Dismiss

Defendants argue in support of dismissal of Plaintiff's ADA claim that Plaintiff

cannot bring a Title I ADA claim against any of the Defendants because Eleventh

Amendment immunity bars the claim for money damages as against New York and its

agencies, and there is no individual liability under the ADA.  Defendants' Memorandum

at 7; First Personius Declaration ¶ 3 (declaring Kendall was joining in the Motion to

Dismiss).  In opposing the Motion to Dismiss, Plaintiff argues that state actors are subject to liability under the ADA for injunctive relief, Plaintiff's Response at 3-4, that the individual defendants are liable under the ADA pursuant to *Ex parte Young*, 209 U.S. 128 (1908) ("*Young* doctrine"), *id.* at 4-5, and that Plaintiff has sufficiently pleaded a *prima facie* case of discrimination under the ADA.  *Id.* at 5-6.  In further support of dismissal, Defendants concede that under the *Young* doctrine, prospective injunctive relief is available under the ADA against the State Police, Defendants' Reply at 2, but reassert there is no individual liability under the ADA even for injunctive relief, *id.* at 2-3, and that Plaintiff has failed to sufficiently allege a *prima facie* case of discrimination under the ADA based on Plaintiff's work-related stress and depression.  *Id.* at 3-4. Because Defendants have conceded the ADA claim may be asserted against Defendant State Police insofar as Plaintiff seeks prospective, injunctive relief, the court first addresses whether the individual Defendants can be liable under Title I of the ADA or whether such liability is barred by the Eleventh Amendment as to require dismissal.

"The Eleventh Amendment prohibits the 'Judicial power of the United States' from extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'"  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (quoting U.S. Const. Amend. XI).  "This jurisdictional bar also immunizes a state entity that is an 'arm of the State,'" *In re Deposit Ins. Agency*, 482 U.S. at 617 (citing *Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006), "including, in appropriate circumstances, a state official acting in his or her official capacity."  *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  "[T]he Eleventh Amendment has been construed

to protect an unconsenting state from suit by its own citizens." *CSX Transp., Inc. v. New York State Office of Real Property Services*, 306 F.3d 87, 94 (2d Cir. 2002) (citing cases).  In the instant case, the parties do not dispute that the State Police is an arm of New York State.

Nevertheless, "[s]tate sovereign immunity [under the Eleventh Amendment] is not absolute.  Congress by statute may abrogate state immunity and subject the states to suit provided that, first, its intention to do so is 'unequivocally expressed' in the statutory language and, second, the legislation is enacted 'pursuant to a valid grant of constitutional authority.'" *In re Deposit Agency*, 482 F.3d at 617 (quoting *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (further quotation marks and citation omitted)).  "The Supreme Court has held that Title I of the ADA is not a valid abrogation of the States' sovereign immunity and thus the Eleventh Amendment bars claims brought under Title I against states or state agencies." *Henny v. New York State*, 842 F.Supp.2d 530, 544 (S.D.N.Y. 2012) (citing *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 368-74 (2001) (holding Congress did not validly abrogate states' Eleventh Amendment immunity for Title I claims seeking monetary damages)).  "A state may also waive its Eleventh Amendment immunity – for example, by voluntarily invoking federal jurisdiction, as when the state itself brings a federal suit or removes a case from state to federal court." *In re Deposit Agency*, 482 F.3d at 617 (citing cases).  "Moreover, under the venerable doctrine of *Ex parte Young*, 209 U.S. 128 (1908), a plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for 'prospective relief' from violations of federal law." *Id.*, 482 F.3d at 617 (quoting *Edelman*, 415 U.S. at 677).  "Application of the *Young* doctrine is straightforward: A

plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual

state officers, as opposed to the state, in their official capacities, provided that his

complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly

characterized as prospective.'"  *Id.* at 618 (quoting *Verizon Maryland Inc. v. Public*

*Service Commission of Maryland*, 535 U.S. 635, 645 (2002)).  *See Garrett*, 531 U.S. at

374 and n. 9 (stating that although "Congress did not validly abrogate the States'

sovereign immunity from suit by private individuals for money damages under Title I [of

the ADA]," the standards applicable to the states proscribed under Title I "can be

enforced by the United States in actions for money damages, as well as by private

individuals in actions for injunctive relief under *Ex parte Young*.").  *See also Henrietta D.*

*v. Bloomberg*, 331 F.3d 261, 287 (2d Cir. 2003) (specifically recognizing that footnote 9

in *Garrett*, "albeit dicta and although specifically addressing Title I, reflects that the *Ex*

*parte Young* exception to the Eleventh Amendment bar to suit is viable under the ADA,"

such that the Eleventh Amendment "does not preclude suits against state officers in

their official capacity for prospective injunctive relief to prevent a continuing violation of

federal law.").  In the instant case, the application of this "straightforward" inquiry

establishes the Eleventh Amendment does not prevent suit against the individual

Defendants, *i.e.*, Christensen and Kendall, insofar as the individual Defendants are

sued in their official capacities, Plaintiff alleges an ongoing violation of federal law, *i.e.*,

the ADA, and Plaintiff seeks only prospective injunctive relief.  *Verizon Maryland Inc.*,

535 U.S. at 645.  Accordingly, the individual Defendants can be sued under the ADA for

prospective, injunctive relief.  The court next considers whether Plaintiff has sufficiently

pleaded a *prima facie* case of discrimination under the ADA.

"A plaintiff asserting a violation of the ADA must prove that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).  Here, the parties do not dispute that the State Police is covered by the ADA, or that Plaintiff suffers from, or is regarded as suffering from a disability as defined under the ADA.  Defendants, however, maintain that Plaintiff, by delivering to Defendants a doctor's note requesting Plaintiff be excused from work because of work-related stress, has admitted he is incapable of performing the essential functions of his job, as required for the third factor. Defendants' Memorandum at 8.  In opposition to dismissal, Plaintiff argues that whether Plaintiff was capable of performing the essential functions of his job presents an issue of fact which the court is precluded from considering on a motion to dismiss, Plaintiff's Response at 5-6, and Defendants disregard the fact that Plaintiff's request for an excused absence was a request for a reasonable accommodation.  *Id.* at 6.  In further support of dismissal, Defendants reiterate that Plaintiff's request for a medical leave is a concession that he was unable to perform the essential functions of his job with the State Police, Defendants' Reply at 4, and also deny that Plaintiff ever requested any reasonable accommodation, asserting that the medical leave Plaintiff requested pursuant to the doctor's note does not qualify as a reasonable accommodation under the ADA.  *Id.* at 8-9.

The parties reference no case law in support of either argument regarding whether Plaintiff has sufficiently alleged a claim under the ADA in connection with Defendants' Motion to Dismiss, but only with regard to Plaintiff's First and Second Motions to Amend.  For example, Plaintiff cites *McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013), for the proposition that the ability to be physically present for work is not, as a matter of law, an essential function of any job.  Plaintiff's First Reply at 8-9; Plaintiff's Second Reply at 9.  In *McMillan*, however, the Second Circuit did not hold that physical presence was never an essential function of any job; rather, the Second Circuit merely recognized that at the plaintiff's place of employment, employees were permitted "flex time" including a one-hour window in which to arrive for work, a one-hour window in which to leave work, and the ability to work through one's lunch period and forgo breaks to "bank" hours for future leave, factors that "implie[d] that punctuality and presence at precise times may not be essential."  *McMillan*, 711 F.3d at 126.  *McMillan* thus, contrary to Plaintiff's argument, does not establish that the Second Circuit "rejects . . . as a matter of law, [that under the ADA] the ability to appear for work is an essential function of any job."  Plaintiff's First Reply at 8-9 (citing *McMillan*, 711 F.3d at 126); Plaintiff's Second Reply at 9 (same).  The Second Circuit thus merely acknowledged that there may exist some jobs that do not require regular attendance at specified times.  *McMillan*, 711 F.3d at 126.  Further, the Second Circuit has acknowledged that "[i]t is clear that an essential aspect of many jobs is the ability to appear at work regularly and on time . . . ."  *Lyons v. Legal Aid. Soc.*, 68 F.3d 1512, 1516 (2d Cir. 1995).  *See also Petrone v. Hampton Bays Union Free School Dist.*, 568 Fed.Appx. 5, at *8 (2d Cir. May 28, 2014) (affirming district court's grant of summary judgment where plaintiff failed to

show his requested accommodation of unpaid leave was reasonable because the plaintiff "gave the [employer] no assurance whatsoever that he would be able to return to work," such that the plaintiff failed to meet his burden of establishing the accommodation of additional unpaid leave would have allowed the plaintiff to perform the essential functions of his job); and *Graves v. Finch Pruyn & Co.*, 353 Fed.Appx. 558, 560-61 (2d Cir. 2009) (affirming district court's grant of summary judgment where the plaintiff, who requested a leave of absence as an accommodation under the ADA, failed to allege the leave would allow the plaintiff to return to work and satisfactorily perform the essential functions of his job).  Further, requesting an indeterminate period of leave for treatment of a psychological condition has been held an unreasonable accommodation where the plaintiff fails to attempt to ascertain from his doctors whether he actually would be able to return to work following the leave.  *Jarrell v. Hospital for Special Care*, 626 Fed.Appx. 308, 311-12 (2d Cir. Sept. 23, 2015) (affirming District Court's grant of summary judgment on ADA employment discrimination claim where accommodation sought by former employee was, in essence, an indeterminate period of leave based on one doctor's note stating the former employee would not be able to return to work for at least 14 weeks, and former employee made no attempt to ascertain whether he would, at the end of the requested 14-week leave, actually be able to return to work).

In the instant case, there is no suggestion that punctuality and physical presence at specific times were not essential to Plaintiff's performance of his employment as a State trooper.  *See Moran v. Wegmans Food Markets, Inc.*, 65 F.Supp.3d 327, 330-31 (W.D.N.Y. 2014) (granting motion to dismiss ADA claim where the plaintiff, a truck

driver, who had requested a medical leave to obtain treatment for cancer, failed to plead the essential functions of his job, or that the leave of absence would enable the plaintiff to resume the essential functions of his job).  Nor has Plaintiff alleged either the length of time for which he seeks medical leave, or that he anticipates that after the requested leave, Plaintiff would be able to return to work and satisfactorily perform the essential functions of his job.  *Petrone*, 568 Fed.Appx. at *8; *Graves*, 353 Fed.Appx. at 560-61; *Jarrell*, 626 Fed. Appx. at 311-12.  Accordingly, Plaintiff has failed to state a claim for relief under the ADA.  Defendants' Motion to Dismiss should be GRANTED as to the ADA claim as against all Defendants.

## 2.    Second Motion to Amend

Plaintiff's Second Proposed Amended Complaint seeks to amend the ADA claim to assert as adverse employment actions that as of June 17, 2014, Plaintiff, rather than being suspended from work, was placed on involuntary leave without pay, Second Proposed Amended Complaint ¶ 123, that Plaintiff's request to engage in outside employment[9] was denied, *id.*, and that the ADA claim is asserted against the State Police, Christensen, and Kendall.  *Id.* ¶ 24.  Defendants argue in opposition to this proposed amendment that no amendment seeking monetary damages under the ADA should be permitted against the State Police or the individual Defendants Christensen and Kendall, Defendants' Second Response at 3; Third Personius Declaration ¶ 2 (joining in Defendants' opposition to Plaintiff's Second Motion to Amend), and that Plaintiff's request for a medical leave of indefinite length demonstrates Plaintiff is not qualified to perform his State Police job as required by the third element of a *prima facie*

---

[9] Plaintiff has not specified the outside employment position in which Plaintiff sought permission to engage while on involuntary leave from the State Police.

case of employment discrimination under the ADA.  Defendants' Second Response at

6-7; Third Personius Declaration ¶ 2.  In further support of amendment, Plaintiff argues

Defendants are aware that the medical leave requested by the doctor's note was for two

weeks, a fact referenced by Plaintiff in connection with the First Motion to Amend.

Plaintiff's Second Reply at 6 (citing Plaintiff's First Memorandum at 9 ("the leave request

was for a finite period which defendants admit in their papers that the pleading states

that plaintiff 'can not (*sic*) do the job at present.'" (quoting Defendants' Response at 5))).

According to Plaintiff, his request for a finite period of leave was to deal with his

disability, and the indefinite leave imposed by Defendants in response to Plaintiff's leave

request establishes that the indefinite leave was imposed by Defendants, not requested

by Plaintiff.  Plaintiff's Second Reply at 6.

As discussed in connection with Defendants' Motion to Dismiss, Discussion,

*supra*, at 25-27, Plaintiff's failure to plead that punctuality and physical presence at

specific times are not essential to performing Plaintiff's job with the State Police, to

specify the length of the requested leave, and to explain that the requested medical

leave would allow Plaintiff to return to work and satisfactorily perform the essential

functions of his job are fatal to his ADA claim.  *Moran*, 65 F.Supp.3d at 330-31 (failure to

plead requested leave of absence would enable the plaintiff to resume the essential

functions of his job supported dismissal of ADA claim); *Graves*, 353 Fed.Appx. at 560-

61 (failure to allege either the length of time requested for medical leave, or that after

medical leave, the plaintiff would be able to return to work and satisfactorily perform the

essential functions of his job supported summary judgment of ADA claim).

Significantly, the Second Proposed Amended Complaint does not allege that the

medical leave requested by the doctor's note was for two weeks or that following the requested leave, Plaintiff would be able to resume working at his State trooper position, nor is any copy of the doctor's note filed as an exhibit either to the Complaint, the First Amended Complaint, the First Proposed Amended Complaint, or the Second Proposed Amended Complaint, or anywhere else in the record.  The Second Proposed Amended Complaint thus fails to state a claim under the ADA and would be subject to dismissal as a matter of law.  Accordingly, Plaintiff's Second Motion to Amend is DENIED as to the ADA claim.

### E.    FMLA Claims

Plaintiff alleges he was denied leave in violation of the FMLA when, upon providing Defendants with the doctor's note requesting medical leave for Plaintiff to seek treatment for his depression based on work-related stress, Defendants State Police and Christensen suspended Plaintiff without pay.  First Amended Complaint, Eleventh Claim ("FMLA interference claim").  Plaintiff further alleges that the circumstances under which he was suspended without pay, in particular, the temporal proximity between Plaintiff's presentment of the doctor's note requesting a medical leave and the suspension the same day, establish a *prima facie* case of retaliation under the FMLA.  First Amended Complaint, Twelfth Claim ("FMLA retaliation claim").

"The FMLA was enacted by Congress in 1993 to address 'inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. . . .'"  *Singh v. New York State Dept. of Taxation and Finance*, 911 F.Supp.2d 223, 239 (W.D.N.Y. 2012) (quoting 29 U.S.C. § 2601(a)(4)).  The FMLA provides that "[e]ligible employees may take leave for up to 12 weeks during

any 12-month period." *Golden v. New York City Dept. of Environmental Protection*, 354 Fed.Appx. 577, 578 (2d Cir. Dec. 2, 2009).  Leave under the FMLA is available for the birth of a child, placement with the employee of a child for adoption or foster care, care for a spouse, child, or parent with a "serious health condition," or the employee's own "serious health condition."  29 U.S.C. § 2612(a)(1)(A)-(D).  The last of these provisions, 29 U.S.C. § 2612(a)(1)(D), is referred to as the "self-care" provision.  Upon returning from an FMLA leave, the employee is entitled to reinstatement to his previous position. *Id.* (citing 29 U.S.C. § 2614(a)(1)).  The FMLA provides for a private right of action for interference with an FMLA right, 29 U.S.C. § 2615(a)(1) (providing that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any substantive FMLA right), as well as for retaliating against an employee who attempts to exercise a right under the FMLA, 29 U.S.C. § 2615(b)(2) (rendering unlawful the discharge of or discrimination against any employee who exercises a substantive FMLA right).

### 1.   Motion to Dismiss

Defendants argue in support of dismissal that Plaintiff cannot bring an FMLA interference claim against the State Police which, as an agency of New York, is entitled to the same Eleventh Amendment immunity as the state itself.  Defendants' Memorandum at 6.  In opposition to Defendants' Motion to Dismiss, Plaintiff concedes that no claim for money damages is viable against the State Police, but argues that because Plaintiff's FMLA interference claim pertains to self-care, the claim may be maintained against the State Police and, under the *Young* doctrine, injunctive relief is

available.[10]  Plaintiff's Response at 7-8.  Plaintiff further maintains that he has pleaded a

*prima facie* case of retaliation under the FMLA because his doctor's note requesting

leave due to stress in the workplace was answered with a suspension.  *Id*. at 8.  In

further support of dismissal, Defendants argue Plaintiff has failed to allege he was

denied any benefits under the FMLA because Plaintiff, upon requesting a leave from

work, was given time off, albeit in the form of a suspension, and Plaintiff has failed to

present any case law establishing the form in which Plaintiff's request for time off was

granted is material.  Defendants' Reply at 4.

Although the Supreme Court has concluded that Congress did not validly

abrogate the states' immunity from suit with respect to the FMLA's "self-care" provision,

*Coleman v. Court of Appeals of Maryland*, __ U.S. __; 132 S.Ct. 1327, 1334-35 (2012),

whether the *Young* doctrine renders Christensen, as a state official, amenable to suit

under the FMLA for injunctive relief has not been addressed by the Supreme Court, the

Second Circuit Court of Appeals, or any District Court within the Second Circuit.  The

question has, however, been presented before the Sixth Circuit Court of Appeals, which

held the Eleventh Amendment does not bar suits for equitable, prospective relief under

the FMLA's self-care provision, such as reinstatement or an injunction against

continuing discrimination or retaliation, against state officials in their official capacity.

*Diaz v. Michigan Dept. of Corrections*, 703 F.3d 956, 964 (6th Cir. 2013).  Accordingly,

---

[10] It is not clear from the Amended Complaint, either the First or Second Proposed Amended Complaints, or any of the papers filed by Plaintiff in opposition to Defendants' Motion to Dismiss or in support of Plaintiff's First and Second Motions to Amend what injunctive relief Plaintiff seeks under the FMLA. Because Plaintiff remains, as far as the court can discern from the papers, a State Police employee, reinstatement cannot be the injunctive relief sought.  It is also not clear from the record whether Plaintiff remains involuntarily suspended from his State Police job.  If so, it is possible that the injunctive relief Plaintiff seeks is reclassifying Plaintiff's leave from an unpaid, involuntary suspension to a medical leave.

the FMLA claims are not barred as against Defendant Christensen by the Eleventh
Amendment.

Defendants, however, also maintain that Plaintiff has failed to state a claim for
relief under the FMLA because the benefits Plaintiff seeks under the FMLA, medical
leave to deal with stress in the workplace, were granted, albeit in the form of an unpaid
suspension.  Defendants' Memorandum at 6-7.  In opposition to dismissal, Plaintiff
asserts that his request per the doctor's note for leave was answered with a
suspension, demonstrating both a denial of benefits under the FMLA as well as
retaliation for requesting FMLA self-care leave.  Plaintiff's Response at 8-9.  In further
support of dismissal, Defendants assert the fact that Plaintiff was given time off in the
form of a suspension, rather than a medical leave, does not change the fact that Plaintiff
was permitted time off from work to deal with his psychological stress.  Defendants'
Reply at 4-5.

A *prima facie* interference claim under the FMLA requires the plaintiff establish
that the defendant denied or otherwise interfered with an FMLA benefit to which the
employee was entitled.  *Graziadio v. Culinary Institute of America*, __ F.3d __; 2016 WL
1055742, at * 6 (2d Cir. Mar. 17, 2016).  Accordingly, to state a claim for interference
with FMLA benefits, Plaintiff must allege (1) that he is an eligible employee under the
FMLA; (2) the defendant is an employer as defined under the FMLA; (3) that he was
entitled to leave under the FMLA; (4) the employee gave notice to the employer of his
intention to take leave under the FMLA; and (5) that he was denied the benefits to which
he was entitled under the FMLA.  *Id.*  In *Graziadio*, the Second Circuit reversed the
District Court's grant of summary judgment in favor of the defendant employer in an

FMLA action where there existed genuine issues of material fact as to whether the employer actually refused to approve the FMLA leave the plaintiff sought based on the employer's failure to give precise answers in response to the plaintiff's questions regarding the requested leave and failed to advise the plaintiff that her doctor's note regarding the plaintiff's son's health was deficient.  There is similar confusion in the instant case insofar as Plaintiff requested a leave for self-care under the FMLA, and Defendants never actually denied the request, but instead, involuntarily suspended Plaintiff for an indefinite amount of time.  That both the medical leave Plaintiff requested and the involuntary suspension on which Defendants placed Plaintiff were unpaid does not establish the two types of leave were materially indistinguishable; rather, according to the First Amended Complaint, unlike a medical leave, Plaintiff has no say as to when his involuntary suspension will end, a situation demonstrated by the difficulty Plaintiff encountered scheduling the IME, the results of which were the basis for Defendants' extending indefinitely Plaintiff's suspension for which Plaintiff has been unable to schedule a hearing, and Defendants' subsequent denial of Plaintiff's request for authorization to engage in other employment while suspended from the State Police. Nor is there any indication in the record that following the involuntary suspension, Plaintiff would be returned to his investigator job with the State Police as would be required following an FMLA leave.  29 U.S.C. § 2614(a)(1).  Accordingly, Plaintiff has stated a claim for interference with leave under the FMLA as against Defendant Christensen and Defendants' Motion to Dismiss should be DENIED as to the Eleventh Claim.

With respect to Plaintiff's FMLA retaliation claim, to state a claim for retaliation under the FMLA, Plaintiff must allege (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliation.  *Graziadio*, 2016 WL 1055742m at * 11 (citing *Donnelly v. Greenburgh Cent. Sch. Dist. No 7*, 691 F.3d 134, 147 (2d Cir. 2012)).  Here, Plaintiff alleges that the day after he submitted his doctor's note requesting medical leave, Defendants placed Plaintiff on involuntary suspension, and denied Plaintiff's request for a hearing regarding the suspension.  First Amended Complaint ¶¶ 121-22.  The temporal proximity between Plaintiff's request for leave, even without the doctor's note included in the record, under the FMLA and Defendants' involuntarily suspending Plaintiff alone is sufficient to support Plaintiff's FMLA retaliation claim.   *See Donnelly*, 691 F.3d 134, 152 (2d Cir. 2012) (denying summary judgment on plaintiff's FMLA retaliation claim where plaintiff's employment evaluations prior to medical leave for gallbladder surgery, taken under the FMLA, were "extremely positive" but deteriorated after returning from the leave, the plaintiff was penalized for excessive absences that a jury could find were protected under the FMLA, and denied tenure).  Accordingly, Defendants' Motion to Dismiss should be DENIED as to Plaintiff's Twelfth Claim asserting retaliation in violation of the FMLA.

## 2.   Second Motion to Amend

Plaintiff seeks to amend his FMLA claims only to clarify that both the FMLA interference and retaliation claims are asserted against Defendants State Police and Christensen.  First Proposed Amended Complaint ¶¶ 121 and 128; Second Proposed

Amended Complaint ¶¶ 132 and 139.  Defendants have not specifically objected to the proposed amendments on this basis.

Nothing in the record suggests Plaintiff unduly delayed in seeking permission to amend the FMLA claims, a finding that is supported by the fact that the requested amendments to the FMLA claims appeared in Plaintiff's First Motion to Amend which, as discussed, Discussion, *supra*, at 11, has been rendered moot by Plaintiff's filing of the Second Motion to Amend.  Further, the proposed clarification as to the Defendants against whom the FMLA claims are asserted establishes such proposed amendments are not requested in bad faith.  Accordingly, with respect to the FMLA claims, Plaintiff's Second Motion to Amend is GRANTED.

### F.   Rehabilitation Act Claim

"Enacted before the ADA, the focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance."  *Powell v. National Board of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (citing 29 U.S.C. § 794(a)).  As relevant, "Section 504 [of the Rehabilitation Act] states that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .'"  29 U.S.C. § 794(a).  As with the ADA, under the Rehabilitation Act, a plaintiff can state a claim for employment discrimination based on the employer's failure to accommodate his disability

> by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that [ ]he is an individual with a disability within the meaning of the [Rehabilitation Act], (3) that, with or without reasonable accommodation, [ ]he could perform the essential functions of the job, and (4)

that the employer had notice of the plaintiff's disability and failed to provide such accommodation.

*Lyons*, 68 F.3d at 1515 (the elements of a discrimination claim under the ADA and § 504 of the Rehabilitation Act are identical, save for the added requirement that the employer receive federal funding).

### 1.    Motion to Dismiss

Because no claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791

*et seq.* ("the Rehabilitation Act"), is asserted in the First Amended Complaint,

Defendants have not moved to dismiss any Rehabilitation Act claim.

### 2.    Second Motion to Amend

Plaintiff's Second Motion to Amend seeks to add claims for discrimination and

retaliation under the Rehabilitation Act.  Second Proposed Amended Complaint, ¶¶ 147-

54 (Fourteenth Claim for Relief alleging discrimination in violation of the Rehabilitation

Act),[11] and ¶¶ 155-62 (Fifteenth Claim for Relief alleging retaliation in violation of the

Rehabilitation Act).  Defendants argue in opposition to the newly proposed

Rehabilitation Act claims that insofar as Plaintiff has failed to specify against which

Defendants he seeks to assert the Rehabilitation Act claims, there is no individual

liability under the Rehabilitation Act such that Defendants assume Plaintiff intends only

to assert the Rehabilitation Act claims against the State Police.  Defendants' Second

Response at 13 n. 5.  Defendants further maintain that, as with Plaintiff's ADA claims,

Plaintiff's request to be excused from work establishes Plaintiff is unable to perform the

essential functions of his job and, thus, Plaintiff is unable to state any claim under the

---

[11] Plaintiff first moved to assert a Rehabilitation Act discrimination claim in his First Motion to Amend.  *See* First Proposed Amended Complaint ¶¶ 136-143.

Rehabilitation Act.  *Id.* at 13.[12]  According to Defendants, because the Second Proposed

Amended Complaint fails to state a claim for which relief can be granted under the

Rehabilitation Act, the Second Proposed Amended Complaint would not withstand a

motion to dismiss for failure to state a claim and, as such, the Second Motion to Amend

should be denied as futile.  *Id.*  In further support of amendment, Plaintiff argues

Defendants' opposition is premised on the "indefinite leave" which Plaintiff asserts

Defendants "manufactured," Plaintiff's Second Reply at 6-7, the assertion of which

demonstrates Defendants' discriminatory intent, *id.* at 7-8, physical presence is not, as a

matter of law, an essential function of a job, *id.* at 8-9, given that employees may be

qualified for a job despite requiring some time off, *id.* at 9, and the essential functions of

a job are to be determined by a trier of fact, not on a motion to dismiss.  *Id.* at 9-10.

Here, the parties do not dispute that the State Police is an employer subject to

the Rehabilitation Act, or that Plaintiff qualifies as an individual with a disability as

defined under the Rehabilitation Act.  Rather, Defendants' opposition to Plaintiff's

Rehabilitation Claims, similar to Defendants' argument regarding Plaintiff's ADA claim,

is that by virtue of being unable to work, Plaintiff was not qualified for his job with the

State Police, and the accommodation Plaintiff sought, *i.e.*, an indefinite medical leave,

was not reasonable.  Defendants' Second Response at 13.  Whether a requested

accommodation is reasonable, however, is subjected to the same analysis as an

accommodation requested under the ADA.  *Lyons*, 68 F.3d at 1515 ("The term

[reasonable accommodation] is to be interpreted in the same way with respect to both

the ADA and the Rehabilitation Act.").  Here, Plaintiff's failure to plausibly establish the

---

[12] The court notes Defendants asserted these same arguments in opposition to Plaintiff's now-moot First Motion to Amend.  Defendants' First Response at 11-12.

medical leave he requested as an accommodation was reasonable under the ADA, Discussion, *supra*, at 25-27, is also fatal to that same leave being considered reasonable under the Rehabilitation Act.  The Rehabilitation Act claims Plaintiff seeks to add would thus be subject to dismissal for failure to state a claim and, as such, are futile.

Plaintiff's Second Motion to Amend is DENIED as to the Rehabilitation Act claims.

### G.    Due Process Claims

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'"  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).   In the instant case, the federal right of which Plaintiff maintains he was deprived is Fourteenth Amendment due process when Christensen, acting under color of state law in his position with the State Police, established pursuant to New York Exec. Law § 31, involuntarily suspended Plaintiff without affording Plaintiff the process plaintiff was due under New York Civil Service Law § 72 ("Civil Serv. Law § 72") governing disability leave for civil servants.  First Amended Complaint ¶¶ 123-129, Thirteenth Claim. Plaintiff's seeks to assert a similar due process claim against Kevin Gagan for denying Plaintiff's request to engage in outside employment because of his involuntary leave. Second Proposed Amended Complaint ¶¶ 163-69 (Sixteenth Claim).

### 1.     Motion to Dismiss

Defendants argue in support of their Motion to Dismiss that Plaintiff's Due

Process Claim against Christensen fails to allege, as required, that Plaintiff was denied

a property interest protected by the Fourteenth Amendment without due process of law,

generally established by showing an employee cannot, under the terms of a statute or

collective bargaining agreement, be terminated or demoted without a hearing, and

Plaintiff's assertion that such right was grounded in Civil Serv. Law § 72 is incorrect

because Plaintiff's employment with the State Police is not covered by Civil Service Law

§ 72, but by New York Executive Law § 215(3) ("Exec. Law § 215(3)"), and the

regulations issued thereunder, particularly 9 N.Y.C.R.R. 488.1 ("Reg. 488.1"), which

governs leave for ordinary disability of State Police employees.  Defendants'

Memorandum at 8-9.  Plaintiff argues in opposition that Defendants point to no case law

in support of their argument, Plaintiff's Response at 9-10, that Exec. Law § 215(3)

pertains only to "discipline" of State Police and, as such, is incongruent with Reg. 488.1

governing "leave for ordinary disability," *id.* at 10, and thus neither Exec. Law § 215(3),

nor Reg. 488.1 applies.  *Id.* at 10-11. In further support of dismissal, Defendants argue

that New York courts have consistently held that Exec. Law § 215(3) removes State

troopers from some of the rights held by other civil servants under the Civil Service Law,

and that the rights due to a civil servant under the Civil Service Law will be applied to

State troopers only "'where the statutory grant of authority to the Superintendent does

not indicate a legislative intent to the contrary.'"  Defendants' Reply at 5 (quoting *Ward

v. Chesworth*, 510 N.Y.S.2d 273, 274 (3rd Dep't 1986)).  Defendants also rely on an

opinion from the New York Department of Civil Service ("NYSDCS"), that Civil Serv.

Law § 72 is superseded by N.Y. Exec. Law § 215(3) with respect to the uniformed staff

of the New York State Police.  *Id.* at 6 (citing NYSDCs Interoffice Memorandum dated

November 21, 1988 from David Diamond ("Diamond"), Law Bureau, to Gerald Reed

(Reed"), Employee Relations Section ("NYSDCs Memorandum")[13]).

　　　　To establish a due process claim in the context of employment, the plaintiff must

allege that he was denied, as a matter of state law, a property interest protected by the

Fourteenth Amendment.  *Velez*, 401 F.3d at 85 ("only where a plaintiff can demonstrate

that state law confers 'a legitimate claim of entitlement' to a particular position will a

property interest in that position arise.").  In the context of employment, "such an interest

is typically established by showing that under the provisions of a statute or collective

bargaining agreement, the employee cannot be terminated or demoted without a

hearing."  *Kelly v. New York City Dept. of Environmental Protection*, 2014 WL 837469,

at * 4 (N.D.N.Y. Mar. 4, 2014) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307,

313-14 (2d Cir. 2002)).  Here, Plaintiff maintains his property interest in his State trooper

job is entitled to the protections set forth under § 72, which Defendants maintain does

not apply to uniformed State trooper positions which are governed by N.Y. Exec. Law §

215(3).  Although the court's research on the issue reveals no case on point, Plaintiff's

assertion that N.Y. Exec. Law § 215(3) pertains only to the "discipline" of State Police is

incorrect; rather, a plain reading of N.Y. Exec. Law § 215 establishes that it governs the

"[o]rganization; salaries; qualifications; appointment; term; rules and regulations" of the

New York State Police.  Further, § 215(3) governs the appointment and removal of

State Police, either by resignation or dismissal, and also provides that "[t]he

superintendent shall make rules and regulations subject to approval by the governor for

---

[13] Zimmermann Declaration Exh. A.

the discipline *and control* of the New York state police and for the examination and

qualifications of applicants for appointment as members thereto . . . ."  N.Y. Exec. Law §

215(3) (italics added).  As such, Plaintiff's assertion that N.Y. Exec. Law § 215(3) is

limited to the discipline of State Police is much too narrow.

This is consistent with the NYSDCS Memorandum in which Diamond responds to

Reed's inquiry whether the "medical disability provisions of Civil Service Law section 72

are applicable to uniformed and civilian staff of the State Police. . . . "  NYSDCS

Memorandum at 1.  According to Diamond, "[i]n brief, uniformed members of the [State

Police] force are not covered by CSL § 72."  *Id.*  As Diamond explains, N.Y. Civil

Service Law § 2(5) provides that all State Police staff are subject to Article V, § 6 of the

New York Constitution and to New York Civil Service Law "except to the extent that the

Civil Service Law is superseded by other law."  *Id.*  Significantly, the New York Court of

Appeals has held that pursuant to N.Y. Exec. Law § 215(3), a State trooper's

qualification for duty or restoration to duty is within the sole authority of the

Superintendent of the State Police, and not the Civil Service Department.  *Id.* at 2 (citing

*Sauer v. Carey*, 407 N.E.2d 1336 (N.Y. 1980) ("In the case of a State trooper, [ ] the

'eligible lists' are prepared and the rehiring decision are made not by a State or

municipal civil service department, but rather by the Superintendent of State Police

pursuant to the special powers conferred upon him by subdivision 3 of section 215 of

the Executive Law. . . . ").  Although at issue in *Sauer* was whether a retired State

trooper was medically fit to return to active service notwithstanding a finding to the

contrary by the Medical Board of Policemen's and Firemen's Retirement System, rather

than a return to service from an involuntary leave, the Court of Appeals' holding

establishes that N.Y. Exec. Law § 215(3) does not, as Plaintiff urges, pertain only to matters of discipline.

Accordingly, because N.Y. Civil Serv. Law § 72 does not apply to Plaintiff, Plaintiff cannot allege a deprivation of a liberty interest created by state law and Plaintiff alleges no deprivation of a contract right such that his due process claim fails. Defendants' Motion to Dismiss should be GRANTED as to Plaintiff's Thirteenth Claim.

### 2.    Second Motion to Amend

Defendants have not opposed Plaintiff's Second Motion to Amend inasmuch as Plaintiff seeks to assert against Gagan a due process claim essentially identical to the Thirteenth Claim asserted against Christensen.  Second Proposed Amended Complaint ¶¶ 163-69 ("Proposed Sixteenth Claim").  Nevertheless, because Plaintiff's proposed Sixteenth Claim is also based on a violation of N.Y. Civil Serv. Law § 72, it also fails to state a claim for relief for the reasons discussed in connection with the Thirteenth Claim. Discussion, *supra*, at 41-42.

Accordingly, Plaintiff's Second Motion to Amend is DENIED as to the Proposed Sixteenth Claim.

### 5.    Dismissal With or Without Prejudice

Although generally, the dismissal of a claim for failure to state a claim for which relief can be granted is without prejudice and with leave to amend, where amendment would be futile, dismissal may be with prejudice and without leave to amend.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As relevant to the instant case, Plaintiff's Title VII claims against Defendants Christensen and Kendall should be dismiss with prejudice because "[e]mployers, not

individuals, are liable under Title VII." *Reynolds*, 685 F.3d at 202.  The ADA claim should be dismissed without prejudice and with leave for Plaintiff to replead the requisite allegations that following the leave, Plaintiff would be able to return and perform the essential functions of his State trooper job.  *Moran*, 65 F.Supp.2d at 330-31.  The Due Process claim asserted against Christensen should be dismissed with prejudice because Plaintiff cannot allege a deprivation of a liberty interest created by state law, nor a deprivation of a contract right.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss (Dkt. 13) should be GRANTED in part and DENIED in part; Plaintiffs' First Motion to Amend (Dkt. 19) is DISMISSED as moot; Plaintiff's Second Motion to Amend (Dkt. 27) is GRANTED in part and DENIED in part.

SO ORDERED, as to Plaintiff's
First and Second Motions to Amend.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to the Motion to Dismiss,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 17, 2016
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       May 17, 2016
            Buffalo, New York